IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
DANIELLE SMITH,              )
                             )
    Plaintiff,               )
                             )    CIVIL ACTION NO.
    v.                       )      2:05cv105-MHT
                             )          (WO)
CPI, CORPORATION,            )
                             )
    Defendant.               )
```

OPINION

Plaintiff Danielle Smith brings this lawsuit against defendant CPI, Corporation, under § 25-5-11.1 of the 1975 Ala. Code.[1] Smith claims that she was terminated from her job in retaliation for receiving workers' compensation benefits from CPI. Jurisdiction is proper under 28 U.S.C. § 1332 (diversity of citizenship). This case is

---

1. In an order dated November 21, 2005 (Doc. No. 41), defendants Sarah Dryer and Melissa Sullivan were dismissed from the case. In an order dated February 22, 2006 (Doc. No. 55), Smith's slander claims were dismissed. In an order dated February 23, 2006 (Doc. No. 57), defendant Jackie Miller was dismissed from the case.

currently before the court on CPI's motion for summary judgment. The motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

CPI is in the business of operating portrait studios in Sears Department Stores. Smith was a manager at one of CPI's locations, and, on July 28, 2003, she suffered a work-related injury.[2] Smith was placed on work restrictions, and CPI paid for her medical treatment and physical therapy through workers' compensation.[3] At the same time, in July 2003, Smith's district manager was terminated and was replaced by Jackie Miller and Melissa Sullivan.

After an internal audit of Smith's store, Miller and Sullivan went to Smith's store on August 28, 2003, and issued her a "final written warning" for violating

---

   2. Pretrial Order (Doc. No. 58), Stipulations, ¶¶ 2, 3, 5.

   3. Defendant's motion for summary judgment (Doc. No. 42), Ex. A, Deposition of Danielle Smith ("Smith deposition"), pp. 151-53, 180.

several company policies.[4] Among the alleged problems with Smith's performance were failure to perform daily cash control; not requiring employees to pay for photos at the time they were taken; giving away proof sheets; displaying photos of her children in the store; clocking in early; not taking lunch breaks; letting customers use multiple coupons in the same day; and letting customers choose their package every time.[5]

One week later, Miller returned to the store to train Smith on the areas in which her performance had been deficient.[6] On October 1, 2003, Smith's work restrictions were lifted, but she asked to step down as manager and become an assistant manager; Miller agreed and appointed Sarah Dryer to be the manager of the store.[7]

---

4. Pretrial Order (Doc. No. 58), Stipulations, ¶ 6.

5. Smith deposition, Ex. 2. Smith had been told by her previous, terminated supervisor that at least some of these practices were acceptable. Smith deposition, pp. 109-11.

6. Smith deposition, pp. 116-17.

7. Id., p. 224.

At the time Dryer took over as manager of the Montgomery CPI location, Smith, Dryer, and Miller met and prepared a document outlining the relevant responsibilities Smith and Dryer would have: Dryer was to train employees and ensure the store was staffed, make the schedule and run time cards, and follow up on all management responsibilities; Smith was to run daily cash control, perform 60-day audits, and keep the orders log; and Dryer and Smith were to share responsibilities for keeping the studio clean, serving customers, and "running ISP."[8]

Dryer was managing both the Montgomery and Tuscaloosa locations at this time; as a result, she expected Smith to do more than the typical assistant manager, particularly because Smith had been a manager before.[9] In early November, Dryer called Smith at work and told her to conduct an inventory review.  Smith thought performing

---

8. Smith deposition, Exs. 14,15.

9. Defendant's motion for summary judgment (Doc. No. 42), Ex. B, Declaration of Sarah Dryer, ¶¶ 2,5.

this inventory was Dryer's responsibility, responded that she could not stay Friday evening to complete the review, and hung up the phone.[10]

On November 10, 2003, Dryer terminated Smith as assistant manager. Smith asked if she could stay on as a photographer, and Dryer told Smith that Smith herself should decide if she wished to stay on in any capacity by later that evening. Five minutes later, Dryer returned and stated that she had made the decision for Smith, handed Smith a letter, and stated that Smith was terminated.[11] The reason given in the letter for the termination was insubordination for hanging up on Dryer during a conversation; the letter also mentioned deficient performance as assistant manager.[12] Smith's

---

10. Smith deposition, p. 267.

11. Id., pp. 260-67.

12. Smith deposition, Ex. 16.

personnel record, dated November 20, 2003, reflects that insubordination was the reason for Smith's termination.[13]

### III. DISCUSSION

Under Alabama law, an employment contract for an indefinite period of time is generally terminable at will be either party with or without justification. Flint Construction Co. v. Hall, 904 So.2d 236, 246 (Ala. 2004). One exception to this rule is the discharge of an employee following that employee's filing of a workers' compensation claim. Id. Section 25-5-11.1 of the 1975 Alabama Code provides, in part, that, "No employee shall be terminated by an employer solely because the employee has instituted or maintained an action against the employer to recover workers' compensation benefits."

In Flint, the Alabama Supreme Court summarized, and to some extent clarified, how courts should approach

---

13. Defendant's motion for summary judgment (Doc. No. 42), Ex. D, Declaration of Candy Minter, Ex. 1, Termination document.

claims under § 25-5-11.1 on a summary-judgment motion. First, a plaintiff must establish a prima-facie case of retaliatory discharge under § 25-5-11.1 by proving "1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of the on-the-job injury, and 4) subsequent termination of employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim." Id. 247 (quoting Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala. 2002)). Although a plaintiff must ultimately prove that the workers' compensation claim was the sole cause for termination in order to prevail, the fourth element of the prima-facie case may be established exclusively through circumstantial evidence that shows a causal link between the workers' compensation claim and the discharge. Id. at 248.

To rebut the presumption of retaliation created by the prima-facie case, the employer may then offer legitimate reasons for the termination. Id. at 250. The

plaintiff then bears the burden of showing that the stated legitimate reason is not true; if the plaintiff calls into question the validity of the stated reason, the plaintiff creates a jury question as to whether the workers' compensation claim was, in fact, the sole reason for termination.  Id.

Thus, at the prima-facie-case stage, a plaintiff need not affirmatively prove that the workers' compensation claim was the "sole" cause of termination, but may use circumstantial evidence to create a presumption of retaliation; the question of whether the workers' compensation claim was the "sole cause" of retaliation is appropriately left to the pretext inquiry.  See id.

Here, the first three elements of the prima-facie case are not disputed.  As to the fourth element, Smith has offered several incidents that she contends are circumstantial evidence of a causal link.  CPI challenges the sufficiency of that evidence, but nevertheless offers a legitimate, non-retaliatory reason for Smith's

discharge: Smith was insubordinate. The court will assume, without deciding, that Smith's circumstantial evidence is sufficient to establish a causal link and focus instead on the pretext inquiry.

"An employer's stated basis for a discharge is sufficient as a matter of law when the underlying facts surrounding the stated basis for the discharge are undisputed and there is no substantial evidence indicating (a) that the stated basis has been applied in a discriminatory manner to employees who have filed workers' compensation claims, (b) that the stated basis conflicts with express company policy on grounds for discharge, or (c) that the employer has disavowed the stated reason or has otherwise acknowledged its pretextual status." Flint, 904 So.2d at 252 (quoting Aldridge, 854 So.2d at 568).

As an initial matter, the facts underlying the stated bases for Smith's discharge are undisputed. The primary rationale for Smith's termination and the basis recorded

in Smith's personnel file was insubordination. Smith does not deny that she hung up on Dryer and acknowledges that she told Dryer that she did not want to stay at work to complete inventory.

Smith has presented no evidence that CPI has fired workers for insubordination or under-performance only when they have filed for worker's compensation. Put another way, Smith has not identified any other CPI employee who was insubordinate or underperformed as Smith did, who did <u>not</u> file for workers' compensation benefits, and was <u>not</u> fired.

Smith also has failed to advance any evidence that her termination conflicted with company policy. In fact, insubordination is a coded reason for termination on CPI's personnel documents. Thus, CPI policy clearly contemplates terminating an employee for that reason. Although Smith asserts that her termination violated CPI's progressive discipline policy, she has offered no evidence to support that assertion. To the contrary, the

record reflects that Smith was progressively disciplined: She received a written warning regarding her performance; she was trained on the areas in which she was deemed deficient; and she stepped down as manager and took on lesser responsibilities as an assistant manager. Hanging up on Dryer and failing to follow Dryer's instructions, which Dryer perceived as insubordination, was the last in a series of concerns that Smith's supervisors had with her performance.

Finally, CPI has not changed its story for Smith's termination: Dryer told Smith she was being terminated for insubordination; the termination letter stated that Smith was being fired for insubordination and also mentions deficient performance; Smith's personnel record reflects that the reason for her termination was insubordination; and Dryer has testified that she terminated Smith for insubordination.

In <u>Flint</u>, the employer originally told the employee he was terminated because it had no work for him, even

12

though a major construction project was incomplete at the time of his termination; during depositions, the employer's representatives stated that the employee was terminated because his preferred type of work was not available and because he had been excessively absent; and at trial the employer stated that it also fired the employee because he had been at a casino when he was supposed to be at work, even though his supervisors had failed to mention that fact at the time of his termination or during the depositions.  904 So.2d at 249. There was also evidence that the employer investigated the allegations of the employee's presence at casinos during work hours only after firing him.  Id. at 251.

Based on the fact that its rationale for firing the employee had changed so dramatically over time, the court concluded that a jury question existed as to the validity of the employer's stated reasons.  Id. at 252. Unlike the employer in Flint, CPI's explanation has remained consistent from the time of Smith's termination

until today.  Although CPI also acknowledges that performance concerns played some part in Smith's termination, it has consistently emphasized insubordination as the basis.

To the extent Smith was terminated for deficient performance, the factual basis of this ground is also sound.  Smith does not challenge the factual basis of any of the allegations of deficient performance contained in the termination letter; that is, she does not deny that she either did or failed to do what Dryer alleged.

Instead, Smith contends that she had no reason to perform certain tasks because they were not her responsibility.  At least three of the allegations--failure to check voice mail when Dryer was away from the office, failure to ensure cash control was performed daily, and failure to be a team player--are related to duties that were assigned to Smith, as memorialized by the October 2003 document.

14

As to Dryer's allegations regarding Smith's failure to manage the schedule, "making the schedule" was actually one of Dryer's duties.  However, the reason stated in the letter is not that Smith failed to manage the schedule, but rather that Smith failed to oversee the schedule when Dryer was out of the office.  Dryer was in charge of two CPI locations during this period of time, and, because Smith had previously been a store manager, Dryer expected Smith to do more than the typical assistant manager.  This included filling in when the manager was away from the office, and Smith has not shown that this expectation on Dryer's part was unreasonable or otherwise pretextual.

In any event, to the extent the scheduling issue could be viewed as an inconsistency, the court concludes that no reasonable jury could conclude that it is sufficient to prove that Dryer's stated reason for termination is pretextual: It is undisputed that the primary reason for Smith's termination was

insubordination, and the schedule issue is but one of four examples of Smith's deficient performance, undisputedly only a secondary ground for dismissal.

***

In sum, Smith has not advanced any evidence that creates a genuine issue of material fact as to whether the stated reason for her termination is pretextual. Thus, even assuming that Smith can state a prima-facie case of retaliation, she cannot, as a matter of law, demonstrate that her workers' compensation claim against CPI was the sole basis for her termination. CPI is therefore entitled to summary judgment on Smith's claim.

An appropriate judgment will entered consistent with this opinion.

DONE, this the 27th day of February, 2006.

                                              /s/ Myron H. Thompson  
                                       UNITED STATES DISTRICT JUDGE